IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROBIN G. THORNTON, on behalf of**
**Herself and others similarly situated,**

 **Plaintiff,**

**v.**            **No. 1:20-CV-1040 JB/LF**

**THE KROGER COMPANY,**
**ALBERTSONS**

 **Defendants.**

## *AMENDED*[1] CLASS ACTION COMPLAINT

 COMES NOW, Plaintiff Robin G. Thornton, by and through undersigned counsel of record Western Agriculture, Resource and Business Advocates, LLP (A. Blair Dunn, Esq. and Jared R. Vander Dussen, Esq.) and the Law Offices of Marshall Ray (Marshall J. Ray, Esq.) on behalf of herself and all others similarly situated, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, the following against Defendants (collectively, "Grocers" or "Defendants"):

## NATURE OF THE ACTION

1. This is a proposed class-action complaint brought on behalf of one class and one subclass (further defined *infra),* comprising consumers who purchased beef products (the "Products," as further defined below) that are deceptively marketed and advertised.

2. Country of Origin Labeling (COOL) is a mandatory U.S. labeling law enforced by the U.S. Department of Agriculture (USDA) that requires retailers to notify their customers with

---

[1] This Complaint is amended pursuant to the Order of the Court, ECF Doc. No 28.

information regarding the source of certain foods, also referred to as covered commodities. The Farm Security and Rural Investment Act of 2002 (2002 Farm Bill), the 2002 Supplemental Appropriations Act (2002 Appropriations), and the Food, Conservation and Energy Act of 2008 (2008 Farm Bill) amended the Agricultural Marketing Act of 1946 (Act) to require retailers to notify their customers of the country of origin of covered commodities. Covered commodities include muscle cuts of beef (including veal), lamb, chicken, goat, and pork; ground beef, ground lamb, ground chicken, ground goat, and ground pork; wild and farm-raised fish and shellfish; perishable agricultural commodities; macadamia nuts; pecans; ginseng; and peanuts. Specifically, this applied to regulations promulgated by USDA that prohibited beef imported post-slaughter or products derived from animals imported for immediate slaughter and required them to be labeled with the originating country and could not be held out exclusively as "Product of the U.S."

3. COOL is not a food safety program. It is a consumer labeling and marketing law regulated by the USDA's Agricultural Marketing Service.

4. As directed by the United States Congress through Public Law 114-113, the Consolidated Appropriations Act of 2016, the U.S. Department of Agriculture's (USDA) Agricultural Marketing Service (AMS) issued a final rule in 2016 that amends the Country of Origin Labeling (COOL) regulations by removing the requirements for muscle cuts of beef and pork, and ground beef and pork. The Consolidated Appropriations Act of 2016 repealed these COOL requirements and immediately after the legislation was passed, USDA stopped enforcing the COOL requirements for beef and pork effective Dec. 18, 2015. USDA is thus considered to be silent as to COOL regulations regarding beef and pork post 2015.

5. Since 2015, Defendants have been advertising beef that is imported into the U.S. post

slaughter as "Product of the U.S." or some similar label designed to give the impression that the beef that the consumer is purchasing is from an animal born, raised and slaughtered in the United States. Likewise, since 2015 Defendants have sold beef from imported cattle for immediate slaughter or for finishing in the United States and advertised the products derived from those animals as "Product of the U.S." Since 2015, imports of beef to the United States are estimated to average $6.2 billion annually.

6.      Since 2015, Defendants have breached consumer trust by advertising that some of their beef products are a "Product of the U.S." when in fact, the products are not derived from domestically originating cattle.

7.      In order to clearly understand the impact that beef imports are having on the market, and their availability to consumers to understand their prevalence, a conversion of live cattle to beef is illustrative. The USDA counts imported live cattle and converts imported beef into a live cattle equivalent. The agency uses a conversion factor of 592 pounds to determine the live cattle equivalent. For example, 1 billion pounds of imported beef is the rough equivalent of 1.7 million live cattle. As of 2019, the Big 4 Packers (Tyson, Cargill, JBS USA and National Beef) as importers now control about 6.9 million cattle in the U.S. market. Only the state of Texas, which controls about 12.6 million cattle exceeds the importers' control. Neither Kansas nor Nebraska, which are the nation's second and third top cattle inventory states, even rival Defendants in domestic cattle inventory.

8.      Defendants' misrepresentations in advertising, which they mail or cause to be delivered to consumers, about beef that is a "Product of the U.S." or is advertised in such a way to cause the consumer to believe that the beef is a product of the U.S. prompts consumers to buy beef products

with more confidence than they might otherwise have, and to pay more for these products than they otherwise would.

9.     Plaintiff Thornton, like other reasonable consumers who see Defendants' representations in advertisement outside of the stores about beef that is a "Product of the U.S.," did not expect the Products to be derived from non-domestic cattle. Plaintiff Thornton, like other reasonable consumers, purchased the Products believing that they were supporting American beef industry by purchasing Products labeled "Product of the U.S."

10.     By deceiving consumers about the true origin of the Products, Defendants are able to sell a greater volume of the Products thereby increasing their own sales and profits.

11.     Because Defendants' advertising of the beef products are false and misleading to reasonable consumers, Plaintiff Thornton brings this case on behalf of herself and the members of the class and subclass seeking injunctive and monetary relief, as set forth more fully below.

## PARTIES

12.     Plaintiff Robin Thornton is a resident of Bernalillo County, New Mexico, and a long-time purchaser of beef Products. During the class period (as further defined below), Plaintiff Thornton and putative class members have continuously purchased beef products in New Mexico from Smith's Grocery Store and Albertsons grocery stores as well as from other locations for Defendants' grocery stores across the nation regularly and continuously, specifically including the steaks, roast, ground beef and other beef products specifically featured in advertisement from Defendants that featured promotional stickers either explicitly or implicitly designating the products as being produced in the United States, following the delivery of the advertisements

examples of which are attached as Exhibits 1, 2 and 3[2].

13.      When she purchased these Products, Plaintiff Thornton did so in reliance on the advertisements she received in the mail or in her newspapers. Plaintiff Thornton recalls receiving these advertisements via USPS or included in the Sunday Albuquerque Journal delivered to her house at least as far back as January of 2018 and as recent as the examples contained in Exhibit 3, which she received in the mail the two days before this Amended Complaint was filed on October 13, 2021. Plaintiff Thornton read the advertisements about "Product of the U.S." or similar statements on red, white and blue flag like images to mean that the Products being advertised that she eventually purchased were from cattle produced (meaning born, raised and slaughtered) in the United States.  Plaintiff Thornton and putative class members received these advertisements on a monthly basis in the mail and every Sunday in the paper, and then purchased the products contained in the pictures in the Exhibits in the days after receiving these advertisements with promotion stickers attached to cooked examples of the raw meat products at the stores, as well as other meat products that were understood to be at the store of domestic origin available for purchase.

14.      Defendant The Kroger Company is an Ohio LLC with its principal place of business in Cincinnati, Ohio that in New Mexico operates Smith's stores and City Market stores.

15.      Defendant Albertsons is a Delaware LLC with its principal place of business in Boise, Idaho, that in New Mexico operates Albertsons, Albertsons Market, Safeway and Market Street.

16.      Defendants market or advertise and sell the Products throughout most of the United States,

---

[2] These exhibits replace the pictures previously included in the original complaint to provide the clarity and clarification ordered by the Court.

including in New Mexico.

## SUBSTANTIVE ALLEGATIONS

17.     In recent years, consumers have grown more concerned about health, sustainability, and animal welfare, leading them to consider how their food is produced. This increased consideration of food production has made consumers more reliant on domestically raised cattle in order to have confidence that the beef they are purchasing meets those concerns, thus a product that is labeled "Product of the U.S." generates a confidence in the consumer that the beef that they are about to purchase is from an American rancher that fulfills their socially conscious and environmentally responsible concerns including concerns that the beef they are about to consume isn't contributing to serious environmental degradation such as what is being experienced in the deforestation of Brazil. In fact, Defendant The Kroger Company recognizes this and markets to consumers that they are concerned about the sustainability.  See Exhibit 4 and http://sustainability.kroger.com/; Exhibit 5 and  https://www.albertsonscompanies.com/our-values/sustainability.html

18.     Consumers, like Plaintiff Thornton, actively seek products that provide assurances regarding animal welfare, food safety standards, environmentally sound production methods and support for the domestic producers. Consumers (as Defendants know) are willing to pay more for products marketed in this way than they are willing to pay for competing products that do not provide these assurances, moreover when presented the choice between buying American beef and foreign beef consumers overwhelmingly prefer American beef.

19.     Defendants advertise a variety of products from the muscle cuts of beef and ground beef (the "Products") that are derived both from cattle born and raised in the United States and from imported beef either live or slaughtered elsewhere.

20.     Defendants represent to consumers that the Products (all of them, not just Products from

cattle born and raised in the USA) are "Products of the USA" even though some of the Products they are selling to consumers were derived from cattle that never drew a breath of American air, much less were born here. The "Product of the U.S." packaging or similar advertising omitting the truth of where the Product actually originated from leads consumers to believe that the beef they are purchasing was born and raised on an American ranch or farm.

## I.   The Reality of the Imported Beef or Live Cattle for the Products Renders the Defendants' Advertising False and Deceptive.

21.   In contrast to what Defendants have told consumers, the Products are made from a mixture of domestically born and raised cattle (actual "Product of the U.S.") and imported beef (approximately 3.06 billion pounds on average since 2014) as well as imported live cattle (approximately 1.94 million head on average since 2014). Unbeknownst to consumers who believe they are supporting exclusively American ranchers and farms raised according to that ethos they understand to be associated to the beef industry in this Country, Defendants are misleading them to use their patronage to support unknown, unqualified beef production practices, such as feedlot shipping across the oceans in an environmentally damaging fashion or such as the environmental devastation of deforestation of the Amazon Rain Forest for grazing witnessed in Brazil.

22.   The advertising delivered to consumers in their homes and businesses of the Products representing the Products as "Product of the U.S." or other similar representations that are prominent on the advertising materials, result in the representations that are necessarily seen by retail purchasers of the Products. Thus, representations made by Defendants regarding country-of-origin results in misleading and false representations being made to the consumer. *See* Exhibits 1, 2 and 3.

23.   The advertising, with its "Product of United States" or "USDA Choice" with no accurate representation of country of origin, prominently directs purchasers to assume that the Products are

actually derived from domestically born and raised cattle when in fact that may not be true at all.

24.     In the instance of the Albertsons' advertising, the absence of the country of origin taken together, with "USDA Choice" red, white and blue graphic, are intended to, and do, portray to consumers that they are purchasing a "Product of the United States."

25.     Contrary to the representations made by Defendants, much of the beef in the Products is not actually a product of the United States.

## II.     Defendants' Have Deceived Consumers and Are Aware That Their Representations Are False.

26.     America's ranchers and farmers have spent decades cultivating a reputation as an environmentally and socially conscious beef industry. Since 2015, when USDA went silent on COOL for beef and pork, Defendants have been able to benefit from that reputation, and from the consumer trust it engenders to sell foreign beef to consumers for the same price as domestically produced beef.

27.     Reasonable consumers rely on grocers, their reputation, and the information provided in grocers' marketing in making purchase decisions, especially in purchasing food.

28.     Reasonable consumers lack the information and scientific knowledge necessary to ascertain the true source, quality, and nature of the beef products they purchase.

29.     Reasonable consumers must, and do, rely on Defendants to advertise honestly where the products originate.

30.     Reasonable consumers are misled and deceived by Defendants' advertising that they receive in the mail or in their newspapers as to where the Products originate from and what that means for how the Product was produced.

31.     Defendants made these false, misleading, and deceptive representations, and omitted the

true information that would counter them, knowing that consumers would rely upon the representations and omissions in purchasing the Products.

32.     In making the false, misleading, and deceptive representations and omissions at issue, Defendants knew and intended for consumers to purchase the Products believing them to be products of the United States when consumers might otherwise purchase a competing product that was actually born, raised and slaughtered in the United States.

33.     In making the false, misleading, and deceptive representations and omissions at issue, Defendants also knew and intended that consumers would purchase foreign beef believing that they were purchasing something that represented a humane, environmentally sound and/or socially responsible, production furthering Defendants' private interest of increasing their profits through the sale of what would otherwise be cheaper valued products to the consumer and decreasing the sales of products that are truthfully marketed by its competitors.

34.     Upon information and belief, Defendants have profited enormously to the detriment of consumers and domestic producers from its falsely marketed products. For example, it is understood that on average per year since 2015, imports for the Big 4 Packers that supply Defendants with the beef they sell to consumers represents close to $6.2 Billion annually.

35.     Defendants' conduct in representing the Products as being products of the United States deceived and/or is likely to deceive the public.

36.     To this day, Defendants continue to conceal and suppress the true origination of the Products in their advertisements.

37.     Defendants' concealment tolls the applicable statute of limitations.

38.     Upon information and belief, Defendants have failed to remedy the problems with their

marketing, thus causing future harm to consumers, as well as real, immediate, and continuing harm.

39.     Plaintiff Thornton and other members of the Class and Subclass will continue to suffer injury if Defendants' deceptive conduct is not enjoined. Plaintiff Thornton would like to continue purchasing the Products in the future. But as a result of Defendants wrongful acts, Plaintiff Thornton and other reasonable consumers can no longer rely on the truth and accuracy of the origination of Defendants' Products. Absent an injunctive order, Plaintiff Thornton and other reasonable consumers are prevented from making a meaningful and informed choice and are otherwise at continued risk of real and immediate threat of repeated injury, including purchasing deceptively advertised Products sold at prices above their true market value.

40.     Defendants have failed to provide adequate relief to members of the Class as of the date of filing this Complaint.

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction under the New Mexico Constitution and the Unfair Practices Act, NMSA 1978 57-12-1 *et seq.*

42.     This Court has personal jurisdiction over the parties in this case. Defendants conduct business in New Mexico and avail themselves of the laws of this State to market and sell the Defendants' Products to consumers throughout New Mexico.

43.     Venue is proper in this District because substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District; Plaintiff Thornton resides in and purchased the Products in this District; and Plaintiff Thornton brings this action

under the laws of New Mexico.

## **CLASS ALLEGATIONS**

44.     Plaintiff Thornton brings this action as a class action pursuant to NMRA Rule 1-023. Plaintiff seeks to represent the following Class and Sub-Class.

> (1)     All consumers in the United States who purchased the Defendants' Products during the applicable limitations period, for their personal use, rather than for resale or distribution ("Class").

> (2)     All consumers in New Mexico who purchased the New Mexico Products during the applicable limitations, for their personal use, rather than for resale or distribution ("New Mexico Sub-Class").

45.     Excluded from the Class and New Mexico Sub-Class are (1) Defendants, any entity or division in which any Defendants' have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

46.     The requirements of Federal Rule of Civil Procedure 23 are satisfied:

> A.     <u>Numerosity:</u> The members of the Class and the New Mexico Sub-Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is currently unknown to Plaintiff Thornton, based on Defendants' volume of sales, Plaintiff Thornton estimates that each will number greater than 40, if not more.

> B.     <u>Commonality:</u> There are questions of law and fact that are common to the Class members and that predominate over individual questions, and therefore, the requirements of Rule 23(b)(3) are met. The common questions of law and fact include

the following:

i.     Whether Defendants materially misrepresented, either through express or implied representations, that the muscle cut of beef in the Products originated exclusively from the United States;

ii.    Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

iii.   Whether Defendants' labeling, marketing, and sale of the Products as products of the United States constitutes unfair, deceptive, fraudulent, or unlawful conduct;

iv.    Whether Defendants warrantied the Products to contain originating exclusively from the United States;

iv.    Whether Defendants procured and have retained ill-gotten gains from members of the Class;

v.     Whether Defendants' conduct injured consumers and, if so, the extent of the injury;

vi.    Whether Plaintiff Thornton and the Class or New Mexico Sub-Class members are entitled to injunctive relief; and

viii.  The appropriate remedies for Defendants' conduct.

C.     Typicality: Plaintiff Thornton's claims are typical of the claims of the Class and New Mexico Sub-Class because Plaintiff Thornton suffered the same injury-i.e., Plaintiff Thornton purchased the Products based on Defendants' misleading representations and omissions about the origination of those cattle for the Products.

     D.    <u>Adequacy:</u> Plaintiff Thornton will fairly and adequately represent and protect the interests of the members of the Class and the New Mexico Sub-Class. Plaintiff Thornton does not have any interests that are adverse to those of the Class members or New Mexico Sub-Class members. Plaintiff Thornton has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

     E.    <u>Superiority:</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.

47.    The prerequisites for maintaining a class action for injunctive or equitable relief under NMRA 1-023 are met because Defendants have acted or refused to act on grounds generally applicable to the Class and to the New Mexico Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
**Violation of the New Mexico Unfair Practices Act**
**(On Behalf of Plaintiff and the New Mexico Subclass)**

48.    Plaintiff Thornton repeats the allegations in all the foregoing paragraphs as if fully set forth

herein.

49.     Plaintiff Thornton brings this claim on her own behalf and on behalf of the New Mexico Subclass.

50.     The Unfair Practices Act (N.M.S.A. §§ 57-12-1 *et seq.* ("UPA")) declares unlawful all "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M.S.A. § 57-12-1. The UPA is to be liberally construed to protect the public and encourage fair and honest competition.

51.     Defendants have acted unfairly and deceptively, in violation of the UPA, by fraudulently advertising to consumers that the muscle cuts of beef in the Products exclusively originates from American Ranchers and Farmers. This representation was likely to mislead consumers acting reasonably under the circumstances and did mislead consumers acting reasonably under the circumstances.

52.     Having made these representations, Defendants have acted unfairly and deceptively, in violation of the UPA, by omitting information about the actual origination of the beef in the Products, a great amount of which originates from imports of beef and imported foreign cattle. This omission was likely to mislead consumers acting reasonably under the circumstances and did mislead consumers acting reasonably under the circumstances.

53.     Defendants' representations and omissions were material to consumers. Defendants' representations and omissions led consumers to believe that the Products were derived from American ranches and farms with a reputation of humane standards, food safety protections, and environmental responsibility. Defendants' representations and omissions led consumers to purchase imported Products, to purchase more of those Products, and/or to pay a higher price for

the Products than they otherwise would have.

54.     Although it is not necessary for Plaintiff Thornton to prove that Defendants intended to act unfairly or deceptively, on information and belief, Defendants did so intend, and did knowingly capitalize on the reputation of domestic beef producers to make material representations and omissions to consumers in New Mexico and across the nation.

55.     Defendants acted with malice, ill will, or wanton conduct in deceiving New Mexico consumers about how their purchasing dollars are being spent, and whether they are supporting domestic producers, or unwittingly spending in support of foreign beef operations associated with environmental degradation. Defendants acted with malice, ill will, or wanton conduct in deceiving New Mexico consumers who wish to support environmentally responsible socially conscious New Mexico and USA-based businesses.

56.     Pursuant to NMSA § 57-12-10, a person who sustains injury or damages as a result of practices prohibited by UPA may sue for equitable relief and to recover damages or return of consideration. Plaintiff Thornton sustained injury and damages when she saw Defendants' representations about the Products and purchased the Products at the frequency and price she did.

57.     Plaintiff Thornton brings this claim for violation of the UPA on her own behalf, and on behalf of other New Mexico consumers who saw the Products labeled as products of the United States and purchased the Products. Plaintiff Thornton is a "person'" pursuant to NMSA § 57-12-2.

58.     Plaintiff Thornton and members of the New Mexico Subclass are entitled to:

> a.  equitable relief;
>
> b.  actual damages or the sum of one hundred dollars ($100), whichever is greater;
>
> c.  exemplary damages for Plaintiff Thornton only as to herself up to three times

actual damages or three hundred dollars ($300), whichever is greater; and

    d.   attorneys' fees and costs.

NMSA § 57-12-10.

## <u>COUNT II</u>
### Breach of Express Warranty (On Behalf of Plaintiff and the Class)

59.    Plaintiff Thornton repeats the allegations in all the foregoing paragraphs as if fully set forth herein.

60.    Plaintiff Thornton brings this claim on her own behalf and on behalf of the Class.

61.    Defendants provided Plaintiff Thornton and members of the Class with written express warranties including, but not limited to, warranties that Products originated exclusively from domestic beef producers.

62.    Plaintiff Thornton and members of the Class purchased the Products believing them to conform to the express warranties made in advertisements.

63.    Defendants breached these warranties.

64.    As a proximate result of the breach of warranties by Defendants, Plaintiff Thornton and the members of the Class did not receive goods as warranted and did not receive the benefit of the bargain. They have been injured and have suffered damages in an amount to be proven at trial.

## <u>COUNT III</u>
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

65.    Plaintiff Thornton repeats the allegations in all the foregoing paragraphs as if fully set forth herein.

66.    Plaintiff Thornton brings this claim on her own behalf and on behalf of the Class.

67.    To the extent required by law, this cause of action is pleaded in the alternative to Plaintiff Thornton's contract-based claims.

68.     As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales of imported Products at the expense of Plaintiff Thornton and the Class members.

69.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff Thornton and the Class members, in light of the fact that the products they purchased were not what Defendants purported them to be.

## PRAYER FOR RELIEF

Plaintiff Thornton, on her own behalf and on behalf of the Class and the New Mexico Subclass, prays for the following relief:

A.      An order certifying the Class and New Mexico Subclass under Rule 23 of the New Mexico Rules of Civil Procedure and naming Plaintiff Thornton as Class and New Mexico Subclass Representative and her attorneys as Class Counsel;

B.      A declaration that Defendants are financially responsible for notifying Class and New Mexico Subclass members of the pendency of this suit;

C.      An order declaring that Defendants' conduct violates the New Mexico UPA;

D.      An order providing appropriate equitable relief in the form of an injunction against Defendants' unlawful and deceptive acts and practices, and requiring proper, complete, and accurate advertising of the Products;

E.      An order providing appropriate equitable relief in the form of an injunction against Defendants' unlawful and deceptive acts and practices, and requiring that Defendants remove and refrain from making representations on advertising that beef that is not born,

raised and slaughtered in the US is not exclusively a product of the US and requiring that any Products from cattle that are not born, raised and slaughtered in the US be advertised in a way to disclose the accurate and complete origination of the Product;

F.    Actual damages for members of the New Mexico Subclass pursuant to NMSA § 57-12-10;

G.    Exemplary damages of 3 times the actual damages for Plaintiff Thornton pursuant NMSA § 57-12-10;

H.    Restitution for members of the Class to recover Defendants' ill-gotten benefits;

I.    Damages for members of the Class arising from Defendants' breach of warranty;

J.    An order finding in favor of Plaintiff Thornton and the Class and New Mexico Subclass on all counts asserted herein;

K.    Prejudgment interest on all amounts awarded;

L.    An order of restitution and all other forms of equitable monetary relief;

M.    Injunctive relief as the Court may deem appropriate; and

N.    An order awarding Plaintiff Thornton, the Class and New Mexico Subclass their attorneys' fees and expenses and costs of suit.


Respectfully submitted,

WESTERN AGRICULTURE, RESOURCE AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com

LAW OFFICE OF MARSHALL J. RAY

*/s/ Marshall J. Ray*
Marshall J. Ray
201 12th St. NW
Albuquerque, NM 87102-1815
(505) 312-7598
mray@mralaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed October 15, 2021 via the CM/ECF System causing all parties of record to be served via electronic means.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.