IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROBIN G. THORNTON, on behalf of**
**Herself and others similarly situated,**
**WENDY IRBY, on behalf of**
**Herself and others similarly situated,**

     **Plaintiff,**

v.     No. 1:20-CV-1040 JB/LF

**THE KROGER COMPANY,**
**PAY AND SAVE, INC,**

     **Defendants.**

**CLOSING BRIEF IN SUPPORT OF THE IRBY MOTION TO CERTIFY CLASS;**
**PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW**

COMES NOW, Plaintiff Wendy Irby, by and through undersigned counsel of record Western Agriculture, Resource and Business Advocates, LLP (A. Blair Dunn, Esq. and Jared R. Vander Dussen, Esq.), Law Offices of Marshall Ray (Marshall J. Ray, Esq.) and Preston Law Offices (Ethan Preston, Esq.) on behalf of herself and all others similarly situated and provide her Closing Brief in Support of the Motion to Certify the New Mexico Class[1] against Pay and Save Inc..

**I.     Closing Brief in Support of Certification of the New Mexico Class[2]**

**II.    Findings of Fact[3]**

  **A. Adoption and Incorporation of Previous Findings of Fact**

---

[1] Plaintiff Irby withdraws the request to certify a multi-state class against Pay and Save for the reasons stated herein.
[2] This Closing Argument fully incorporates by reference Plaintiff Thornton's Written Brief in Support of the Motion to Certify Class filed concurrently without repeating it here.
[3] *See Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 617, FN3 (D.N.M. 2019)

1

This Court, in resolving Plaintiff Thornton's Motion for Preliminary Injunction (ECF Doc. 36) and Defendant Kroger's Motion to Dismiss (ECF Doc. 14) previously made factual determinations, MOO, ECF Doc. 115 at 4-31, for which no evidence determined to date calls into question with only two exceptions. One of those exceptions relates to this Court's determination that the use of the USDA Shield without any modification could not plausibly state a claim for misrepresentation of geographic origin. That determination by this Court in the MOO at 235, is not in dispute before the Court as part of class certification for either Kroger or Pay and Save, but is called into question by the survey research published by USDA. *See* ECF Doc. 268-3 at 65[4]. Additionally, though it is oft repeated by Kroger and is expected to be offered as fact by Kroger, there has been no determination by this Court that Kroger has never advertised ground beef as a product of the United States. Here, however, ground beef is not in dispute as Pay and Save has never disputed that they sold ground beef under the promotional logo of "All American[5]." (*See* Motion at 1, ECF Doc. 215)

**B. Facts Satisfying Rule 23(a)'s Requirements for NM UPA Class.**

 **1. Facts Demonstrating that by a Preponderance of the Evidence the Numerosity Requirement is Met.**

   a. Well more than 1000 people in New Mexico have purchased beef from Pay and Save that was advertised since early 2018 as All American when it geographically originated, at least in some part outside of the United States. (*See* Motion at 13-14, ECF Doc. 215; Reply at 17-18, ECF Doc. 247; ECF Doc. 215-4 at 15;

---

[4] "About 18% of eligible consumers mistakenly believed that USDA Choice means the meat is a product of the United States, and 11% mistakenly believed that the USDA mark of inspection means the meat is a product of the United States."

[5] Because Plaintiff Irby is self-limiting her requested certification to a class of New Mexico consumers under the UPA, the "Truly Texas" deceptive promotional logo is no longer at issue as reflected in this filing.

https://www.beefitswhatsfordinner.com/retail/sales-data-shopper-insights/ground-beef-at-retail-and-foodservice;

https://www.statista.com/topics/1447/beef-market/#dossierKeyfigures)

2. **Facts Demonstrating that by a Preponderance of the Evidence the Commonality Requirement is Met**

   a. A very significant portion of consumers are misled to believe that the beef that they were purchasing was from cattle born raised and slaughtered in the United States. (*See* Sanderoff Survey, ECF Doc. 215-3 at 3 (62%) and USDA Survey, ECF Doc. 268-3 at 65 (63%).)

   b. Pay and Save sold foreign beef advertised as American beef to New Mexico consumers in each of the years that it was using the offending promotional logo. (*See* ECF Doc. 215-5 at 3-5, 17-18; Ex. A to Speer Decl. ¶¶ 4.1-4.5)

   c. Consumers attached a lesser economic value to purchases of foreign beef (*See* ECF Doc. 215-5 at 13 and ECF Doc. 268-3 at 65-66.)

   d. Pay and Save's conduct was willful and wanton because it knew (for many months after it was joined to the lawsuit) that a significant portion of the beef it was advertising as a product of the United States was not exclusively of American origin. (*See* Class Certification Hearing Transcript, December 5, 2022, ECF Doc. 251-5 at 253, 253:20 – 254:4).

   e. How much foreign originating beef was sold to New Mexico consumers between May 2018 and November 2021 can be determined from Pay and Save's sales records and the disease traceability records maintained by the Packers and intermediaries disclosed in discovery that supply Pay and Save. (*See* Class Certification Hearing Transcript, December 5, 2022, ECF Doc. 251-2 at 57-61.)

3. **Facts Demonstrating that by a Preponderance of the Evidence the Typicality Requirement is Met**

   a. Plaintiff was misled by the advertising at issue in this case to believe that the beef she was purchasing was from cattle born raised and slaughtered in the United States. (*See* Class Certification Hearing Transcript, December 5, 2022, ECF Doc. 251-2 at 255-257.)

   b. Plaintiff testified that she received circulars with her newspaper, reviewed advertising on Defendant's online website, and observed advertising materials in the store. *See* Doc. 251-2, at 251:14-23, 250:23-251:6.

   c. Plaintiff reviewed these advertising materials as part of her process of making a decision to purchase beef from Defendant. *See* Doc. 251-2, at 251:14-23.

   d. Plaintiff based her decision to go to Defendant's store on the advertisements she saw related to beef products. Doc. 251-2, at 256:1-9.

   e. The advertisements that were viewed by Plaintiff are the same advertisements that were conveyed to putative New Mexico Class members by mail, newspaper or online.

   f. These advertisements highlighted "All American" beef.

   g. Plaintiff expressed a desire to purchase American-produced beef, but also stated that she seeks transparency so that the "consumer can make an educated choice." Doc. 251-2, at 253:1-15.

   h. An estimated 62% of Sanderoff Survey Respondents (ECF Doc. 215-3 at 3) and 63% of USDA Survey Respondents (ECF Doc. 268-3 at 65.) interpreted these advertisements at issue in the same manner as Plaintiff. *See also* (ECF Doc. 215-2 at 23, 90:19 – 91:21; 30, 117:3 – 117:7).

4. **Facts Demonstrating that by a Preponderance of the Evidence the Adequacy of Plaintiff Irby and Proposed Class Counsel Requirement is Met**

    a. Plaintiff Irby's interests are fully aligned with the putative class members and she is conflict free. (*See* Class Certification Hearing Transcript, December 5, 2022, ECF Doc. 251-2 at 250:1 – 266:4).

    b. Plaintiff Irby is a consumer requesting leave to be a class representative for other consumers, and her concerns include the desire to purchase American products and to assure transparency in the way beef products are advertised. Doc. 251-2, at 253:1-15.

    c. Ms. Irby testified that she saw the advertising materials at issue in this case, that those materials were a lure for her to enter the Defendant's retail location, and that she then purchased products believing they were from cattle that had been raised, slaughtered, butchered, and packaged in the United States. (Irby Deposition Transcript, Doc. 215-2, at 12, 45:3-45:13.) She seeks to represent a class of other consumers who also would have seen the advertising materials and been mislead by those materials.

    d. Proposed Plaintiffs' Class Counsel has the experience and expertise to adequately represent the class. (*See* ECF Doc. 215-9, 215-10 and 215-11). Ethan Preston specializes in class litigation and has participated in numerous class action suits. ECF Doc. 215-11.  Mr. Dunn's practice has included a significant focus on agriculture and litigation related to agricultural issues for the 15 years that he has been practicing law. (ECF Doc.215-9). Mr. Ray has been involved in civil litigation since he began practicing law in 2009.  His practice has included class action work on behalf of defendants and plaintiffs, and he has extensive litigation and trial experience in federal court. ECF Doc. 215-10.

**C. Facts Satisfying Rule 23(b)(3)'s Requirements for the NM UPA Class**

1. **Facts Demonstrating that by a Preponderance of the Evidence the Requirement for Common Questions of Law or Fact to Predominate are Met.**

    a. In addition to Facts 1(a), 2 (a)-(e), and 3 (a)-(h), Pay and Save's advertising of beef of foreign origins was material and relied upon by consumers to their detriment. (ECF Doc. 215-3 at 2,8 and ECF Doc. 268-3 at 65-66.) Plaintiff Irby was lured into the store by Pay and Save's advertising materials and purchased beef products specifically expecting that the "All American" beef she bought was, in fact, "All American." (ECF Doc. 251-2, at 255:14-21, 256:1-257:7.) Putative class members have stated at a rate of 62% that they interpret the advertising materials at issue the same way Ms. Irby did. (ECF Doc. 215-3 at 3)

    b. Pay and Save has knowingly and purposefully purchased beef that is comingled with foreign sourced beef to avoid truthfully advertising the geographic origin of the beef products it advertised and labeled as "All American." (*See* ECF Doc. 251-5 at 253, 253:20 – 254:4); Ex. A to Speer Decl. ¶ 4.4 A. 3.)[6]

2. **Facts Demonstrating that by a Preponderance of the Evidence that a Class Action a Superior Method are Met.**

    a. Pay and Save's beef products in some form or at some point bore the false advertising or benefitted by proximity to the used of the deceptive logo with regard to geographic origin in violation of the UPA. (*See* ECF Doc. 227 at 3) This includes advertising ground beef with the false advertising to mislead consumers regarding the commingled foreign sourcing of that beef. (*See* ECF Doc. 215 at 2; Ex. A to

---

[6] "To that end, nearly all imported beef (product) arrives in the United States as lean trimmings (90% lean) for the purpose of being blended with fed cattle trimmings (50% lean) to make ground beef and/or hamburger. This product does NOT carry any tie to USDA Quality Grades, and it is my understanding that Kroger has never advertised such product with the "USDA CHOICE: Produced in the USA" graphic at issue in this litigation."

Speer Decl. ¶ 4.4 A. 3.

b. Consumers are willing to pay a premium for beef of American origin or are unwilling to purchase beef of a foreign origin. (*See* ECF Doc. 215-5 at 13; ECF Doc. 268-3 at 65-66.

c. In New Mexico the number of potential claims that could be brought individually for the year 2020 is estimated at over 55,880. (Assuming that Pay and Save's 21 New Mexico stores represent 15% of the beef sold at all of Pay and Save's 138 stores, ECF Doc. 227 at 3, selling 5 lbs. packages of ground beef at $4.00/lbs. of the total gross sales of beef by persons more likely to purchase beef because of the All American graphic by Pay and Save for 2020 of $37,253,842.24, ECF Doc. 215-5 at 18.)

## III. Conclusions of Law

### A. Relevant Law Regarding NM UPA Claims

New Mexico's UPA is designed to protect Consumers from false advertising. The basic requirements to state a UPA claim are,

> (1) [the] defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person.

*Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007). The New Mexico Supreme Court has identified the policy objective of the Unfair Practices Act as intending to "provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 166 P.3d 1091, 1096 (N.M. App. 2007). "[T]he focus on advertising suggests that the UPA addresses representations directed at the public at large, as

consumers. *Id*., 2007-NMCA-100, ¶ 22, 142 N.M. at 442, 166 P.3d at 1096. Unfair practices involve "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made ... in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person," including but not limited to "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive" and "stating that a transaction involves rights, remedies or obligations that it does not involve." NMSA 1978, § 57-12-2(D)(14) and (15).

This Court, in a previous decision, laid out a detailed explanation of the elements and operation of New Mexico's UPA as follows:

> 53. "The UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices." *Valdez v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 1132414 at *19 (D.N.M. Mar. 31, 2012)(Browning, J.)(*citing Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 22, 147 N.M. 583, 227 P.3d 73, 80)). "Generally speaking, the UPA is designed to provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler–Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 142 N.M. 437, 166 P.3d 1091, 1096.[]
>
> 54. To state a claim under the UPA for an unfair or deceptive practice, a complaint must allege:
>> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.
>
> *Lohman v. Daimler–Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 166 P.3d at 1093 (*citing* N.M. Stat. Ann. § 57–12–12(D); *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97, 811 P.2d 1308, 1311)). "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem–Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748, 965 P.2d 332, 338.
>
> 55. Under the UPA, unconscionable trade practices include
>> act[s] or practice[s] in connection with ... the extension of credit in the collection of debts that to a person's detriment:
>> (1) take[ ] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

> (2) result[ ] in a gross disparity between the value received by a person and the price paid.

N.M. Stat. Ann. § 57–12–2(E). Accordingly, a trade practice can be procedurally unconscionable, under § 57–12–2(E)(1), or substantively unconscionable, under § 57–12–2(E)(2). *See Cordova v. World Finance Corp.*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 208 P.3d 901 ("The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives.")

56. "Procedural unconscionability ... examines the particular factual circumstances surrounding the formation of [a] contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Cordova v. World Finance Corp.*, 2009-NMSC-021, ¶ 23, 146 N.M. 256, 208 P.3d at 907–08.

57. Substantive unconscionability, on the other hand, "concerns the legality and fairness of the contract terms themselves," and "focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar policy concerns." *Cordova v. World Finance Corp.*, 2009-NMSC-021, ¶ 22, 146 N.M. 256, 208 P.3d at 907. A contractual term is substantively unconscionable if it is illegal, or if it "is grossly unreasonable and against our public policy under the circumstances," *Cordova v. World Finance Corp.*, 2009-NMSC-021, ¶ 31, 146 N.M. 256, 208 P.3d at 909, even if "there is not a statute that specifically limits [such] contract terms," because "[r]uling on substantive unconscionability is an inherent equitable power of the court, and does not require prior legislative action," *State ex rel. King v. B & B Investment Group, Inc.*, 2014-NMSC-024, ¶ 33, 329 P.3d 658, 670. Moreover, the UPA's provisions regarding unconscionability "evince[ ] a legislative recognition that, under certain conditions, the market *1247 is truly not free, leaving it for courts to determine when the market is not free, and empowering courts to stop and preclude those who prey on the desperation of others from being rewarded with windfall profits." *State ex rel. King v. B & B Investment Group, Inc.*, 2014-NMSC-024, ¶ 33, 329 P.3d at 671.

58. Under the UPA, "[a]ny person who suffers any loss of money or property, real or personal, as a result of any ... method, act or practice declared unlawful by the [UPA] may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater." N.M. Stat. Ann. § 57–12–10(B). UPA plaintiffs do not need to show actual damages, or the actual loss of money or property to recover statutory damages, however. *See Lohman v. Daimler–Chrysler Corp.*, 2007-NMCA-100, ¶ 44, 142 N.M. 437, 166 P.3d at 1099–1100 ("[T]he UPA does not require proof of actual monetary or property loss.").[ ]

59. In a class action under the UPA, statutory damages are available only to *1248 the named plaintiff whereas class members can recover only their actual damages. See N.M. Stat. Ann. § 57–12–10(B).

> 60. Injunctive relief under the UPA is available to people "likely to be damaged by an unfair or deceptive trade practice ... under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required." N.M. Stat. Ann. § 57–12–10(A).
>
> 61. "The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails." N.M. Stat. Ann. § 57–12–10(C).

*Daye v. Cmty. Fin. Loan Serv. Centers, LLC*, 280 F. Supp. 3d 1222, 1245–48 (D.N.M. 2017) (paragraph numbers in original). This approach, as explained by the Court, is a sound explanation of New Mexico's UPA.

**B. Conclusions of Law for Rule 23(a)'s Requirements for NM UPA Class.**

   **1. Numerosity**

In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002)(Babcock, J.)(*quoting Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986)(Kane, J.)). *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997)(noting that rule 23(a)(1) is not a " 'strict numerical test' "; holding, however, that where class comprises over 1,100 persons, suggestion that joinder is not impractical is "frivolous" (*citing Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976))); *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993)("[T]he difficulty in joining as few as 40 putative class members should raise a presumption that joinder is impracticable."); 1 Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels, § 3.05, at 141-42 (2d ed. 1985). Here because the commonsense assumption that the Court can make based upon the

evidence is that a number far greater than 1000 (conservatively over 55,000 in 2020 for Pay and Save) individuals make up the New Mexico class, the requirement for numerosity is satisfied.

**2. Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even "factual differences in the claims of the individual putative class members should not result in a denial of class certification where common questions of law exist." *In re Intelcom Grp. Sec. Litig.*, 169 F.R.D. 142, 148 (D. Colo. 1996)(Daniel, J.). *See Adamson v. Bowen*, 855 F.2d at 676 ("That the claims of individual putative class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy."); *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D.N.M. 2002)(Vázquez, J.)("Commonality requires only a single issue common to the class, and the fact that 'the claims of individual putative class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.' " (citations omitted)(*citing In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) and *quoting Adamson v. Bowen*, 855 F.2d at 676)) Here, the Plaintiff has demonstrated that the question of whether the misrepresentation in advertisements of the geographic origin of beef that was sold by Pay and Save violates the NM UPA is common and material to all class members.

**3. Typicality**

Rule 23(a)(3) requires that the named representative's claims be typical of the class' claims. See Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that absent proposed class members are adequately represented by evaluating whether the named

plaintiff's interests are sufficiently aligned with the class' interest. *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. at 622 (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1320 (11th Cir. 2008)). Here, Irby's claim that she was misled by advertisements to purchase beef that she believed was of American origin when some of it was of foreign origin that she otherwise would not have purchase or at a minimum would have expected to pay less for is typical of the class members' claims under the NM UPA. Ms. Irby's claims arise because of advertising materials which were sent out to the public at large via newspaper circulars, web advertising, and in-store advertising. Ms. Irby was a consumer and member of that public that was exposed to, viewed, and responded to the advertising materials Ms. Irby claims were false in a material way. The same claims of liability would therefore apply to the rest of the putative class members.

**4. Adequacy**

a. Plaintiff Irby "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The requirement of typicality dovetails into the requirement of adequacy of representation." *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991)(Crow, J.)(*quoting Penn v. San Juan Hospital, Inc.*, 528 F.2d at 1189). *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d at 1219 (noting that "the commonality, typicality, and adequacy requirements of Rule 23(a) 'tend to merge' " (*quoting Wal-Mart*, 564 U.S. at 349 n.5, 131 S.Ct. 2541)). Plaintiff Irby does not have any conflicts with other proposed class members and she has demonstrated that she will vigorously prosecute the action on the class' behalf meeting the test for the Tenth Circuit.

*See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

b. As this Court has noted "[a]lthough Tenth Circuit precedent suggests that the adequacy-of-counsel analysis is conducted as a part of the rule 23(a)(4) inquiry, *see Lopez v. City of Santa Fe*, 206 F.R.D. at 289-90, this analysis has now been moved to rule 23(g)." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 662 (D.N.M. 2019) Proposed class counsel, based upon their disclosed experience and relevant knowledge, are adequate class counsel.

B. **Conclusions of Law for Rule 23(b)'s Requirements for NM UPA Class**

   1. **Predominance**

   a. The proposed Irby class's NM UPA claims (1) is comprised almost entirely of the elements of misrepresentation of foreign beef made as American beef in advertisements made in connection of the sale of that beef to unsuspecting New Mexico consumers which susceptible to generalized proof, and (2) which predominates over individual inquires over reliance on the advertising because detrimental reliance is not at issue in a NM UPA claim[7]. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 397 (D.N.M. 2015), *adhered to on reconsideration, Anderson Living Tr. v. WPX Energy Prod.*, LLC, 312 F.R.D. 620 (D.N.M. 2015); *citing CGC Holding Co. LLC v. Broad & Cassel,* 773 F.3d 1076 (10th Cir.2014).

   b. Based upon the information regarding the price differentials between American beef and

---

[7] To the extent that USTC's argument is premised on Plaintiff's failure to allege detrimental reliance, the argument has been rejected. "[T]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.' " *Smoot v. Physicians Life Ins. Co.,* 2004–NMCA–027, ¶ 21, 135 N.M. 265, 87 P.3d 545. Accordingly, a claimant need not prove reliance upon a defendant's deceptive conduct in this context. *Id.* ¶ 22.
*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 35, 142 N.M. 437, 444, 166 P.3d 1091, 1098

foreign originating beef, based upon the Sanderoff Survey and the USDA Survey, a common methodology for class member damages predominates over individual damage calculations. *See Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 668 (D.N.M. 2019) Here, the potential for hundreds of thousands of claimants seeking at most a few hundred dollars each predominates because it yields substantial economies in litigation. *See Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)

## 2. Superiority

"Courts should not judge manageability in a vacuum, but rather—as a part of the superiority analysis—they should assess how the difficulties the class action device present stack up against the difficulties that other available procedural mechanisms present." *Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 657 (D.N.M. 2015) (collecting cases). Here, the obvious alternative to a class action would be for plaintiffs to bring individual suits against Pay and Save – potentially well over 50,000 individual suits in New Mexico. This would be grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation." *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004). Tens of thousands, if not hundreds of thousands, of individual actions are not *practical*, let alone *preferable*, here. *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1283 (D. Kan. 2012) ("individual lawsuits filed by five thousand class members [] would have been more burdensome on the class members and the court"); *Rodriguez v. Cascade Collections LLC*, 532 F. Supp. 3d 1099, 1123 (D. Utah 2021) ("the burden to the judicial system associated with adjudicating 188 individual lawsuits" supported superiority).

## CONCLUSION

Wherefore, Plaintiff respectfully requests that the Court certify the New Mexico UPA class proposed by Plaintiff Irby under the definitions proposed in her motion with the modifications that the Court deems to be appropriate.

Respectfully submitted:

*/s/ A. Blair Dunn, Esq.*
WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com

and

LAW OFFICE OF MARSHALL J. RAY
Marshall J. Ray
514 Marble Ave NW
Albuquerque, NM 87102
(505) 312-7598
mray@mralaw.com

and

PRESTON LAW OFFICES
Ethan Preston
ep@eplaw.us
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340; Fax: (866) 509-1197

*Attorneys for Plaintiffs Thornton and Irby, on their own behalf, and behalf of all others similarly situated*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I filed the foregoing via CM/ECF on this 10th day of April 2023, causing all parties to receive notice via electronic means.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.